# United States Tax Court

T.C. Memo. 2023-92

DORCHESTER FARMS PROPERTY, LLC, DORCHESTER FARMS
MANAGER, LLC, TAX MATTERS PARTNER,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

_____

Docket No. 6441-20. Filed July 24, 2023.

_____

*Vivian D. Hoard* and *Meeren S. Amin*, for petitioner.

*Richard C. Mills III*, *Erin A. Schaffer-Williams*, *Peter T. McCary*, *John W. Sheffield III*, *John T. Arthur*, and *A. Gary Begun*, for respondent.

MEMORANDUM OPINION

LAUBER, *Judge*: This case involves a charitable contribution deduction claimed for 2016 by Dorchester Farms Property, LLC (Dorchester), for the donation of a conservation easement. The Internal Revenue Service (IRS or respondent) issued a notice of final partnership administrative adjustment (FPAA) disallowing the deduction and determining penalties. Currently before the Court is respondent's Motion for Partial Summary Judgment contending that the IRS complied with the requirements of section 6751(b)(1) by securing timely supervisory approval of all penalties at issue.[1] We agree and will grant the Motion.

_____

[1] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C., in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure.

[*2]                                   *Background*

The following facts are derived from the pleadings, the parties' Motion papers, and the Exhibits and Declarations attached thereto. They are stated solely for purposes of deciding respondent's Motion and not as findings of fact in this case. *See Sundstrand Corp. v. Commissioner*, 98 T.C. 518, 520 (1992), *aff'd*, 17 F.3d 965 (7th Cir. 1994).

Dorchester is a Georgia limited liability company (LLC) organized in April 2016. It is treated as a TEFRA partnership for Federal income tax purposes,[2] and its tax matters partner is petitioner Dorchester Farms Manager, LLC, likewise a Georgia entity. Dorchester had its principal place of business in Georgia when the Petition was timely filed. Absent stipulation to the contrary, appeal of this case would lie to the U.S. Court of Appeals for the Eleventh Circuit. *See* § 7482(b)(1)(E).

In December 2016 Dorchester donated to the Southern Conservation Trust a conservation easement over a 625-acre tract in Liberty County, Georgia. Dorchester timely filed Form 1065, U.S. Return of Partnership Income, for its 2016 tax year. On that return it claimed a charitable contribution deduction of $18,663,918 for its donation of the easement.

The IRS selected Dorchester's 2016 return for examination and assigned the case to Revenue Agent (RA) Leopoldo Garcia. In October 2019, as the examination neared completion, RA Garcia recommended assertion against Dorchester of the 40% penalty for a gross valuation misstatement. *See* § 6662(h). In the alternative, he recommended assertion of a 20% penalty for a substantial valuation misstatement, a reportable transactions understatement, negligence, and/or a substantial understatement of income tax. *See* §§ 6662(b)(1)–(3), (c)–(e), 6662A(b).

RA Garcia's recommendations to this effect were set forth in a civil penalty approval form, a copy of which is included with respondent's Motion. RA Garcia is listed as the "Examiner" at the top of this form. His group manager, Margaret McCarter, digitally signed the penalty approval form on October 3, 2019. She verified that she was RA Garcia's "group manager" and that she "approve[d] the penalties identified" in that form.

---

[2] Before its repeal, TEFRA (Tax Equity and Fiscal Responsibility Act of 1982), Pub. L. No. 97-248, §§ 401–407, 96 Stat. 324, 648–71, governed the tax treatment and audit process for many partnerships, including Dorchester.

**[\*3]**   On October 22, 2019, RA Garcia mailed petitioner a packet of documents, including a Letter 1807 and an attached Form 4605–A, Examination Changes, which set forth his proposed adjustments and penalty recommendations. This packet of documents constituted the first formal communication to petitioner that the IRS intended to assert the penalties discussed above, as recommended by RA Garcia and approved by Ms. McCarter. More than four months later, on March 12, 2020, the IRS issued petitioner an FPAA, including a Form 866–A, Explanation of Items, disallowing the $18,663,918 deduction Dorchester claimed for the conservation easement and determining the aforementioned penalties. Petitioner timely petitioned this Court for readjustment of partnership items.

*Discussion*

I.    *Summary Judgment Standard*

The purpose of summary judgment is to expedite litigation and avoid costly, unnecessary, and time-consuming trials. *See FPL Grp., Inc. & Subs. v. Commissioner*, 116 T.C. 73, 74 (2001). We may grant partial summary judgment regarding an issue as to which there is no genuine dispute as to any material fact and a decision may be rendered as a matter of law. *See* Rule 121(a)(2); *Sundstrand Corp.*, 98 T.C. at 520. In deciding whether to grant summary judgment, we construe factual materials and inferences drawn from them in the light most favorable to the nonmoving party. *Sundstrand Corp.*, 98 T.C. at 520. Where the moving party makes and properly supports a motion for summary judgment, "the nonmovant may not rest on the allegations or denials in that party's pleading" but must set forth specific facts, by affidavit or otherwise, showing that there is a genuine dispute for trial. Rule 121(d).

II.    *Analysis*

Section 6751(b)(1) provides that "[n]o penalty under this title shall be assessed unless the initial determination of such assessment is personally approved (in writing) by the immediate supervisor of the individual making such determination."[3] In *Kroner v. Commissioner*, 48 F.4th 1272, 1276 (11th Cir. 2022), *rev'g in part* T.C. Memo. 2020-73, the Eleventh Circuit held that "the IRS satisfies [s]ection 6751(b) so long as

---

[3] Although the Commissioner does not bear a burden of production with respect to penalties in a partnership-level proceeding, a partnership may raise section 6751(b) as an affirmative defense. *See Dynamo Holdings Ltd. P'ship v. Commissioner*, 150 T.C. 224, 236–37 (2018).

**[\*4]** a supervisor approves an initial determination of a penalty assessment before [the IRS] assesses those penalties." The court interpreted the phrase "initial determination of [the] assessment" to refer to the "ministerial" process by which the IRS formally records the tax debt. *See id.* at 1278. Absent stipulation to the contrary, this case is appealable to the Eleventh Circuit, and we thus follow its precedent. *See Golsen v. Commissioner*, 54 T.C. 742, 756–57 (1970), *aff'd*, 445 F.2d 985 (10th Cir. 1971).

Under a literal application of the standard enunciated in *Kroner*, supervisory approval could seemingly be secured at any moment before actual assessment of the tax. But the Eleventh Circuit left open the possibility that supervisory approval in some cases might need to be secured sooner, i.e., before the supervisor "has lost the discretion to disapprove" the penalty determination. *See Kroner v. Commissioner*, 48 F.4th at 1279 n.1; *cf. Laidlaw's Harley Davidson Sales, Inc. v. Commissioner*, 29 F.4th 1066, 1074 (9th Cir. 2022) (treating supervisory approval as timely if secured before the penalty is assessed or "before the relevant supervisor loses discretion whether to approve the penalty assessment"), *rev'g and remanding* 154 T.C. 68 (2020); *Chai v. Commissioner*, 851 F.3d 190, 220 (2d Cir. 2017) (concluding that supervisory approval must be obtained at a time when "the supervisor has the discretion to give or withhold it"), *aff'g in part, rev'g in part* T.C. Memo. 2015-42.

Respondent has supplied a copy of the civil penalty approval form that lists all of the penalties at issue. RA Garcia was the examiner who recommended assertion of these penalties. His name appears as the "Examiner" at the top of the form, and his case activity record—a redacted version of which is included with respondent's Motion—shows that he was the lead "examiner" for the Dorchester examination.[4]

Ms. McCarter digitally signed the penalty approval form as RA Garcia's "group manager" in the box captioned "Name and Title of Approver." We accordingly conclude that she was RA Garcia's "immediate supervisor" within the meaning of section 6751(b)(1). *See Sand Inv. Co.*

---

[4] RA Garcia's case activity record, attached as Exhibit C to the Declaration accompanying respondent's Motion, redacts seven lines of the document on pages 1 and 2, all relating to entries made before March 1, 2019. Petitioner complains that it has "no way of knowing what information is redacted." But the Declaration, which was filed under penalties of perjury, avers that the information thus redacted was protected by the attorney-client privilege or was taxpayer privacy information protected from disclosure by section 6103. We find that these redactions were properly made in accordance with Rule 27, and they do not affect our disposition of the issue at hand.

**[\*5]** *v. Commissioner*, 157 T.C. 136, 142 (2021); *see also Salacoa Stone Quarry, LLC v. Commissioner*, T.C. Memo. 2023-68, at \*6 (holding that Ms. McCarter's signature as "team manager" on a penalty approval form satisfied the statutory requirements); *Sparta Pink Prop., LLC v. Commissioner*, T.C. Memo. 2022-88, 124 T.C.M. (CCH) 121, 124 (holding that Ms. McCarter's signature as "group manager" on a penalty approval form satisfied the statutory requirements).

All of the penalties at issue were approved by Ms. McCarter on October 3, 2019. The Letter 1807 and the Form 4605–A were mailed to petitioner on October 22, 2019, and the FPAA was issued on March 12, 2020. As of October 3, 2019, therefore, the IRS examination remained at a stage where Ms. McCarter had discretion to approve or disapprove the penalty recommendations. *See Kroner v. Commissioner*, 48 F.4th at 1279 n.1. Therefore, under a reading of *Kroner* most favorable to petitioner, the IRS complied with the requirements of section 6751(b)(1).

Petitioner advances essentially three arguments in support of a contrary conclusion. First, while not disputing that RA Garcia prepared the civil penalty approval form, petitioner surmises that RA Garcia recommended the "categorical assertion of penalties based on the type of transaction" rather than undertaking "a substantive determination" that penalties were appropriate in this particular case. Noting that RA Garcia's case activity record does not specifically mention "determining penalties," petitioner infers that he did not devote significant time or effort to this task.

We have repeatedly rejected this line of argument. Faced with assertions that IRS officers gave insufficient consideration to the matters before them, we have ruled such lines of inquiry "immaterial and wholly irrelevant to ascertaining whether respondent complied with the written supervisory approval requirement." *Patel v. Commissioner*, T.C. Memo. 2020-133, 120 T.C.M. (CCH) 211, 214 (quoting *Raifman v. Commissioner*, T.C. Memo. 2018-101, 116 T.C.M. (CCH) 13, 27–28); *see Estate of Morrissette v. Commissioner*, T.C. Memo. 2021-60, 121 T.C.M. (CCH) 1447, 1474. Section 6751(b)(1) does not inquire into the time or effort the examiner and the supervisor devote to their respective tasks. Rather, as we have said before: "The written supervisory approval requirement . . . requires just that: written supervisory approval." *Pickens Decorative Stone, LLC v. Commissioner*, T.C. Memo. 2022-22, 123 T.C.M. (CCH) 1127, 1130 (quoting *Raifman*, 116 T.C.M. (CCH) at 28).

**[\*6]**    Second, while not disputing that RA Garcia was the "examiner" for the Dorchester audit, petitioner questions whether RA Garcia made the "initial determination" to assert the penalties in question. Petitioner speculates that it was not RA Garcia, but "the IRS Office of Chief Counsel or [someone] at another level of [r]espondent" who made that decision. Petitioner notes that, on October 7, 2019, RA Garcia recorded in his activity record his receipt of a "[Form] 866–A draft" from IRS chief counsel. This occurred four days *after* Ms. McCarter had signed the penalty approval form. Surmising that RA Garcia may have had previous consultations with other IRS officers before recommending the penalties that he set forth on the penalty approval form, petitioner has issued informal discovery seeking "any communications or guidance provided to [RA] Garcia or Ms. McCarter regarding the imposition of penalties."

We have previously rejected the argument that penalties in fact recommended by an examining agent were in substance determined by someone else, e.g., by higher level IRS officials or by an in-house IRS appraiser. *See Cattail Holdings, LLC v. Commissioner*, T.C. Memo. 2023-17, at \*9–11. The "initial determination of [a penalty] assessment" is a formal action directed to a particular taxpayer by the Examination Division. *See Frost v. Commissioner*, 154 T.C. 23, 32 (2020); *Belair Woods, LLC v. Commissioner*, 154 T.C. 1, 15 (2020). The word "determination" has "an established meaning in the tax context" and denotes an action "with a high degree of concreteness and formality." *Nassau River Stone, LLC v. Commissioner*, T.C. Memo. 2023-36, at \*6 (quoting *Belair Woods*, 154 T.C. at 15). It is the duty of the examining agent to determine penalties, taking into account (among other things) the value of the property contributed and possible defenses the taxpayer may have. *See Cattail Holdings*, T.C. Memo. 2023-17, at \*11.

Petitioner's speculation that RA Garcia, the lead examiner for the Dorchester audit, did not make the "initial determination" to assert the penalties against Dorchester is not enough to establish a genuine dispute of material fact. *See* Rule 121(d). We accept arguendo petitioner's premise that RA Garcia may have consulted with other IRS officers in connection with the recommendations he set forth on the penalty approval form. But an "initial determination" signifies a "consequential moment" of IRS action. *Belair Woods*, 154 T.C. at 15 (quoting *Chai v. Commissioner*, 851 F.3d at 221). Preliminary discussion among IRS officials as to whether a penalty is appropriate does not constitute the "initial determination of [a penalty] assessment" within the meaning of section 6751(b)(1). *See Nassau River Stone*, T.C. Memo. 2023-36, at \*6–7 (citing *Belair Woods*, 154 T.C. at 9). The penalty approval form

**[\*7]** establishes that RA Garcia made the "initial determination" to assert the penalties set forth on that form.

Finally, petitioner contends that "[r]espondent did not make any effort to authenticate" the documents discussed above, including the civil penalty approval form and the redacted copy of RA Garcia's case activity record. In petitioner's view, "these documents are not sufficient to warrant summary judgment as a matter of law."

This line of argument is equally unpersuasive. We have regularly decided section 6751(b)(1) questions on summary judgment on the basis of IRS forms and records, confirmed by declarations supplied by IRS officers. *See, e.g.*, *Sand Inv.*, 157 T.C. at 142; *Long Branch Land, LLC v. Commissioner*, T.C. Memo. 2022-2; *Excelsior Aggregates, LLC v. Commissioner*, T.C. Memo. 2021-125. Respondent has supplied documentary evidence confirming that RA Garcia was the examiner for the Dorchester audit and that Ms. McCarter approved his penalty recommendation in her capacity as his "group manager." Respondent has submitted a declaration under the penalties of perjury averring that all these documents are "true and correct copies" from the IRS administrative file. We have repeatedly held that a group manager's signature on a civil penalty approval form, without more, is sufficient to satisfy the statutory requirements. *Salacoa Stone Quarry*, T.C. Memo. 2023-68, at \*6; *Sparta Pink Prop.*, 124 T.C.M. (CCH) at 124 (citing *Belair Woods*, 154 T.C. at 17). The record establishes that these requirements were met here.

We are mindful that "summary judgment should not be granted until the party opposing the motion has had an adequate opportunity for discovery." *Snook v. Tr. Co. of Ga. Bank of Savannah, N.A.*, 859 F.2d 865, 870 (11th Cir. 1988); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986) (noting that the nonmoving party must have had "a full opportunity to conduct discovery"). But discovery must be relevant to "the subject matter involved in the pending case." Rule 70(b)(1); *see Hickman v. Taylor*, 329 U.S. 495, 507–08 (1947); *Caney v. Commissioner*, T.C. Memo. 2010-90, 99 T.C.M. (CCH) 1366, 1368.

The discovery petitioner seeks is irrelevant to resolution of the question presented by respondent's Motion. *See Salacoa Stone Quarry*, T.C. Memo. 2023-68, at \*5–6; *Caney*, 99 T.C.M. (CCH) at 1368 (considering whether "further discovery would likely yield any fact essential to [the nonmoving party's] opposition to the motion"). The record includes documents demonstrating written supervisory approval of the

**[\*8]** examining agent's initial determination to assert the penalties in question. By propounding discovery seeking communications among RA Garcia, Ms. McCarter, and other IRS officials, petitioner seeks improperly to look behind the information and signature appearing on the face of the form. *See Sparta Pink Prop.*, 124 T.C.M. (CCH) at 124; *Patel*, 120 T.C.M. (CCH) at 214; *Raifman*, 116 T.C.M. (CCH) at 28.

To reflect the foregoing,

*An order will be issued granting respondent's Motion for Partial Summary Judgment.*